We'll hear the first argued case, Fabula v. American Medical. Good morning, may it please the court. My name is Jonathan Levine and I represent Ronald Torches, trustee of the Bankruptcy Estate of Relator Paul Fabula and Relator Paul Fabula individually, appellants in this matter. The first issue on this appeal presents the following question under the False Claims Act. Where a complaint describes in detail a fraudulent scheme that had as its object the obtaining of improper payments from the federal government, does Rule 9b require that the Relator plead in detail the specific invoices submitted to the government in order to survive a motion to dismiss? Relator submits that where is here the FCA complaint alleges a fraudulent scheme whose specific object is obtaining improper payments from the government. In other words, where the FCA complaint alleges not a private fraud, but rather a specifically government-directed fraud, properly particularized allegations of the underlying fraudulent scheme to obtain those improper government payments will permit an inference that the false claims were actually submitted and are therefore sufficient to satisfy the pleading standards of Rule 9b. Could you point to those parts of the Third Amendment complaint that best make your case? Well, Your Honor, there are two aspects with respect to the claims. There are the claims of the specific details about the fraud and then there are the claims with respect to the allegations of presentment. With respect to the specific details about the fraud, the Third Amendment complaint identifies the persons at AMR who directed the scheme and provides firsthand accounts of the statements by the supervisors in support of the scheme, namely that the charges were required to qualify for Medicare reimbursement. Those allegations are at the Joint Appendix pages 334 to 336, 340, and 357, which are paragraphs 32, 33, 36, 38, 39, 49. Do you allege that claims were actually submitted? Yes, Your Honor. Contrary to the suggestion of the defendants in this appeal and a statement by the district court, the complaint does specifically allege that AMR actually submitted claims for reimbursement that it knew were not reimbursable by Medicare. That's at paragraph 19 of the Third Amendment complaint, which is at 332 of the Joint Appendix. Paragraph 97, which is at pages — at page 349 of the Joint Appendix. Paragraphs 105 and 108, which are at page 352 of the Joint Appendix. And, yes, with respect to paragraphs 105 and 108, those allegations were pled on information and belief, and I think that was a function of the fastidiousness, quite frankly, of trial counsel that it was uncomfortable pleading a specific billing that neither trial counsel nor the relator individually had actual knowledge occurred. The Third Amendment complaint doesn't plead a specific billing, you acknowledge that? It does not plead a specific invoice, yes. What it pleads is that fraudulent claims must have been submitted. I think what it pleads is that there was a specifically institutionalized scheme to change the representation of ambulance runs so that they were Medicare reimbursable. And I think that would only be the first step. The second step would be the actual submission of a false claim. And do you know that that happened? I mean, even on — there were some specific patients identified, but we don't know from the complaint whether claims were actually submitted to the government for those patients. Well, Your Honor, I think that speaks to the circuit split that's been identified in the briefs with respect to the requirement of pleadings as to a specific presentment. And I think that we're — and we've described the circuit split, but I think that that circuit split is now coalescing around a majority rule that was actually expressed most recently, interestingly, by the Sixth Circuit, which had previously been one of the most strenuous advocates of the heightened pleading rule. The Sixth Circuit in the Prather v. Brookdale senior living case that we cited in our Rule 28J letter indicated at this point that every circuit that had applied a heightened standard, save ours, has retreated from such a requirement in cases in which other detailed factual allegations support a strong inference that claims were submitted. I'm puzzled that you feel the need to take that position, that is that it really doesn't matter, at least in this kind of case, whether claims were submitted. As I read paragraph 108 of the third amended complaint, it alleges that the claim in a particular case specified as to the date, specified as to the person and his address who was transported, was indeed submitted to Medicare. Now, that's on information and belief, but I'm not sure we have any requirement under Rule 9B or even under Rule 9B that a plaintiff say not just this is the claim that was submitted, I hereby allege this specific claim was submitted, but I saw it with my own eyeballs. Where would that requirement come from? Judge Lynch, I think that's fair. I think that what I'm, and yes, I do agree that 105 and 108 do specifically allege, admittedly on information and belief, that particular specified ambulance runs, which are identifiable to the defendant, were submitted to Medicare. I agree that Rule 9B allows a claimant to plead on information and belief, particularly where it's clear that the information is in the exclusive domain of the defendant. That's clearly been the law in this circuit, and I think that that permits, then, a reasonable inference of presentment, and I think what happened here. If somebody says to a plaintiff, put this false statement down so we can submit it to Medicare, and he then puts that false statement down on the instruction of the supervisor, I'm just trying to grasp at what is it that makes this so radical when that person alleges in a complaint that the claim was indeed submitted to Medicare? Well, Judge, I think you're making my argument for me. I think that it isn't particularly radical. I think that Rule 9B law, certainly from this circuit, permits a finding where there's a plausible inference that the bills would have been submitted because of the underlying scheme. Rule 9B allows the relator to plead the submission of those bills on information and belief. Rule 9B specifies that certain things have to be pleaded in detail, but I'm not sure it changes the standard as to what evidentiary basis a lawyer or a plaintiff has to have in order to make such an allegation. Am I missing something? No, I don't believe you are, Judge. I agree that what's happened is that there's — Is there any reason why you didn't make that argument directly? Did you have some sort of hesitations? I thought, actually, Judge, that I was heading there. I thought that what my argument is is that because we've pled the underlying fraudulent scheme, because we have pled particular ambulance runs that are identifiable to the defendant and to the court, that those pleadings are sufficient to meet the 9B pleading standard with respect to a false claims act. Yes, you did make that. Now, if we hold that the Keaton relator doesn't need to plead details of all the specifics of a claim, would that have any effect on our pleading standards with other kinds of fraud like securities fraud? I don't think there's any reason why it needs to, Your Honor. I think that the 9B standard — look, I think that the jurisprudence with respect to 9B is informed by the notion that there are essentially private frauds or private efforts to shave good medical standards or to obtain billings through kickbacks or through Stark Act violations that don't necessarily — that don't necessarily have to do with government-directed frauds. This allegation here is a specifically government-directed fraud. The allegation is that these changes were made to the patient care reports for the specific purpose of obtaining Medicare reimbursement. I think that in that context, holding that 9B does not apply to the presentment aspect of a false claims act claim does not require this Court to step back in any way, shape, or form from its jurisprudence with respect to the applicability of 9B in securities litigation or in any of the other kind of fraud claims that this Court regularly adjudicates. Let me ask you, if I could, about the way that you draw on Congressman Berman's statements in the congressional record. Those statements were made in the extension of remarks, right, and were made after the passage in the House of the bill. Isn't that correct? They are made in extended remarks. And so don't we traditionally look with some skepticism about such remarks? I think that in this particular situation, you had an author of the legislation. And, yes, it's clearly not dispositive of the legislative history, but it's certainly probative. And the legislative history — He should have made it on the floor, and he didn't. Indeed. I recognize that it's not a dispositive evidence of the legislative history. But bear in mind that the text of the statute is also ambiguous. With respect to the retaliation claim, what Judge Shea here did was that he determined that the addition of the language other efforts to stop one or more violations of this subchapter was intended to be modified by the prior language of lawful acts in furtherance of. Now, that prior language existed in the preamendment version of the statute. So that prior language does not — I mean, there's not a necessary interpretation of this statute to indicate that there needs to be an act in furtherance of some larger effort to stop a violation of the FCA. I don't understand that argument either. Speech can be an act. Speech is an act all the time. People can be punished for speech if, for example, it's inciting of a crime. That's not an omission. That's not a mere negligence. What your client is alleging here is not everybody else was corrupt, but I wasn't. And I didn't do these sort of false statements that other people did. He's alleging that he specifically refused to participate in at least one claim where, as far as we can tell, he not only made an effort to stop that from happening, but he did stop it from happening because the allegations of the complaint say only two people could have done the change. One had already refused. He refused. The inference is it couldn't be changed and, therefore, at least that claim wasn't submitted. Isn't that what the complaint alleges? That's correct, Judge Lynch. And that is, in fact, our argument with respect to what the retaliation standard should be. So why does he have to? I mean, is there any requirement that he has to have taken an action to somehow blow the whistle on the entirety of the scheme? The retaliation section talks about stopping a false claim, right? I agree that that is correct. One or more. I agree that that is the correct interpretation of the statutory language, that in this case there is protection from or, rather, there is protection for an employee who suffers adverse employment action because of one or more efforts, because of other efforts to stop one or more violations of the subchapter. By refusing, that is a form of trying to stop. I believe that is the case, yes. That is our position with respect to the retaliation. As far as we know, a successful effort to stop the submission of that particular false claim. Yes, that's correct. Okay. You'll have three minutes in rebuttal. Thank you. Thank you. May it please the Court, Pamela Johnston from Folland and Lardner for Defendant Appley American Medical Response. There are three arguments I'd like to make today. We'll be resting on the brief on some of the other issues, given the limited time. Following the text of the False Claims Act, you do need a false claim, and everybody would agree on that. And when you combine that with 9B, you do need that it be pled with rigor. We are asking the Court to follow the First Circuit, the 11th, 4th, 6th, and 8th, mostly the First Circuit, I would say, and primarily the recent case from the First Circuit, cyberonics, which was decided in December of last year. What is the minimal additional amount of information that you think would have had to have been pled? Excellent question, Your Honor. I've been thinking about that. In the ambulance industry, I think what we would need to go and figure out and be able to answer and therefore respond is we would need to know the patient's name or initials, if they were redacted. We would need to know the date of the transport. We would need to know what it is that was medically unnecessary for that particular run. Those are the basics. Tell me why paragraph 108 doesn't satisfy that. My version of that is redacted for the privacy of the patient, but I assume yours wasn't. There's a patient identified as B. His particular address is given. There is a description of what was false about it. How hard is it going to be for the company to identify that particular invoice? The problem is we don't have a date here, Your Honor. Your client's records don't enable you to look up transport billing by patient? They do permit us to do that. And this is very specific about what it is that was said. It's specific as to, I mean, there are six dozen of these during 2011, so I suppose that's a lot of allegations, but he's saying they were all like this. What's to prevent your client from identifying whether this is a fabrication or not? The problem is we, okay, a couple of things. My recollection is, and perhaps in reply, appellants counsel can correct me, but I think these were initials and we don't have a date. So the way the computer system works, and we did actually try, this is outside the record, but we did actually try to figure out what these things were about. This isn't just an academic exercise. Having somebody being trained. The names were not provided of the patients? Not the names. I believe they were initials, but, again, it's been a long time since I've looked at the unredacted version of the Third Amendment complaint, so I apologize if I have that wrong. You had Mr. Fabula's name. Of course. You could have asked, I suppose. If he were only given initials, you could have asked if they had the names for the patients? Yes, but this was on a motion to dismiss. I mean, it doesn't seem like an overwhelming task to have figured out which runs were in question. You were given details. It actually was harder than you would think, Your Honor, and the reason for that is being told that somebody is overweight and diabetic and gets called out on an ambulance when there's thousands and thousands and thousands of runs, and Mr. Fabula worked there for more than a year, does actually make it hard. That's not how the data is cross-referenced, if you will. You have his specific address. Yes, that's true. There are a lot of people with initials ABC at the same address who are diabetic and overweight and call ambulances? I don't know, Your Honor. Well, I mean, logically . . . I guess we'll hear from the plaintiff as to why they even bothered to redact it if all that was in there was initials in the first place, but it was certainly my impression looking at the redacted complaint that we had reasonably specifically identified people. So I missed a point when Chief Judge Katzmann asked me a question about what we need. The other thing I forgot, of course, is the most important thing, which is were the claims submitted to the government or not. You have to remember that claims . . . Well, that's alleged. So the question is, once it's said, I took this patient to the hospital, here's his or her name, let's assume that for the moment, address, an approximate date, the medical complaint, and here's the falsity that I put in the report. And on information and belief, the company submitted an invoice attaching that false statement. You're saying he has to be able to say, I saw with my own eyeballs that this invoice was submitted to the government? Is that what's missing? No, Your Honor. First, as the Court knows, we are arguing for the stricter standard, and the Court has actually gone and is applying the looser standard. I'm asking you, what justifies a stricter standard here than that? What in Rule 9b says he has to have seen it, he can't allege on information and belief that in this specific case, on or about this date, a false invoice was submitted to the government, and here is what is false about it, that I had to falsely certify that he had difficulty maintaining an upright position. And that's in the report. So to answer your question specifically, Your Honor, on information and belief is typically only reserved for those cases where the looser standard is used, like the grub standard, and that's the first thing. And then the second thing is, it's used only when the information about the claim is peculiarly in the defendant's possession. Did the plaintiff specifically allege that he was forbidden as part of his job to go into the office where the invoices were made and sent and kept? He does allege that, Your Honor. So how is that not peculiarly in the defendant's possession? I mean, it seems to me that what you're saying is all a company has to do to avoid these whistleblowers is make sure that the EMTs don't see whether the bills are submitted and that the billing people only see the falsified information and so can, in good conscience and without any question or concern, submit the bill. Isn't that the result of what? I just don't understand this. So, Your Honor, there's a big piece. Why is that a good standard that we should adopt? Well, it's not a good standard. I agree with Your Honor that it's not a good standard. But there's a missing piece here. And the missing piece is the fact that Mr. Fabula is standing in the shoes of the government. It's an assigned claim, as we know, from Vermont. The government has all this data. So this does not fall into the rubric of cases. But how would he know? He can be provided it by the government. How would he know? I mean, it's not peculiarly within the opposing party's knowledge, not his. But it's not. How would he know? So someone can provide it to him. For example, he's a relator. He can talk to government counsel. They can give it to him if they want to. There's no prohibition. The government gets involved in a very small percentage of these cases. True, but there is still a moment when they can provide information. This case was under investigation for more than a year. I thought the whole point of these quitem actions is that because the government doesn't have the resources to investigate all these things, individuals can bring these claims and bring things to the attention of the courts that the government, for whatever reason, is not able to or interested in pursuing. It is, Your Honor, but the policy reasons under the False Claims Act also have a balance, as we know from Escobar, the recent Supreme Court case. If he got the information from the government, wouldn't you be here arguing that he's not really a legitimate relator at all because his information? I mean, I remember a case we had where somebody got that information from the government under the Freedom of Information Act, and he was thrown out because it wasn't his information. It was the government's information. I think he's still an original source. We haven't argued that he's not the original source. Well, gee, I think I remember Judge Kessler and I getting reversed by the Supreme Court on exactly that issue, that under the Freedom of Information Act, he got it from the Freedom of Information Act, a case called Schindler Elevator, I think. I do remember that case, and I didn't know Your Honors were on the bench for that. Yeah, well, that's why I remember it a little more vividly. Okay, well, fair enough. I'm just trying to figure out. Very vivid memory of that case. Is this something that the—it seems like there are catch-22s littering the playing field here. Well, the False Claims Act is meant to be not a general fraud statute but a false claims fraud statute. That's what it really comes down to. In the amicus brief, they mention the fact that only 6% of non-intervening cases result in a settlement or judgment. And that tells us that there are many, many frivolous or— and show that the false statements that he claims are in there aren't there, and then he loses. I see my time is up, Your Honor. May I have 30 seconds? No, your time isn't up. Okay, thank you, Your Honor. Would the Court permit me to turn to retaliation for just a moment? I have a question for you, Your Honor. Yes, Your Honor. I guess in this situation, it seems that this is somebody who arguably, more than arguably, tried to stop something. He refused to do something. He tried to have this stopped. Why isn't that enough? Because there's a lack of knowledge. So you have to combine the action, him refusing to fill out the patient care report, with telling somebody, I'm not filling out—he says he couldn't remember and he wasn't comfortable doing it. That's not enough. So the defendant has to be on notice that—I mean, this is very basic in retaliation. You have to—in order to retaliate, you must know that the person is doing something. They're calling the hotline. They're calling the government. I mean, there's lots of cases. Didn't he tell the supervisor that he wouldn't fill it out? Why isn't that sufficient? He did, Your Honor, but that is not knowledge under the whistleblower concept, that he is doing something that is in furtherance of stopping a violation. But you're saying this is analogous to the kind of Title VII claims we get all the time, where a person says, I'm not happy with the fact that they didn't let me go on a lunch break, and doesn't specifically say it was because of my race or gender or something, that they didn't let me go on a lunch break, and therefore the complaint isn't sufficiently—doesn't have a sufficient nexus to the kind of discrimination that is the subject of the statute. And you're saying here, he just said, gee, I don't remember this. He didn't say, I'm not going to do this because it's a fraud. Because it's wrong. Yeah. Right. And so now I understand that argument. Does that mean you're not making the argument that I took Judge Shea to be relying on, that this was not an act or was a mere omission, that he simply did not participate, which is different from resisting? We're moving away from that, Your Honor. I don't think that's a great argument. Okay. But as the Court knows, the Court can affirm on any ground. Yes, yes, of course. Regardless. Of course. So your principle of reliance today is on the idea that he did not sufficiently identify the basis for his refusal to alter the report as being that at a minimum this would be a falsehood and maybe at a maximum that you are asking me to defraud the government? Yes, Your Honor. Minimum or maximum? Does he have to say not just this is a falsehood and I won't participate in falsifying your records, or does he have to say I won't participate in falsifying your records because that will result in a false claim being made to the United States government? Given that this is the whistleblower statute under the False Claims Act and not a general – You'd say the latter. I'd say the latter. But if he says I will not participate in falsifying records, why does he have to say anything more? Don't some words convey what the problem is? Your Honor – What more does he need to say? He does have to connect it to the government in some regard. And the reason for that is unlike some of the cases that I know Your Honors have read, there are many payors in this market. In other words, insurance companies are billed, government agencies are billed, individuals are billed, and then most importantly because a lot of these were 911 or 911 runs based on emergency situations, there are lots of claims that are not billed at all. Billed for denial is what it's called in the industry. And so that's why in the ambulance industry, particularly when you're talking about a 911 contract, which is mostly what he talks about here, you cannot make the assumption there's not a strong inference. Without making assumptions, but could we not infer from the Third Amendment complaint that fraudulent claims were indeed submitted? I don't believe so, Your Honor, because the fraudulent claim has to be submitted. What other reason was there to falsify these reports other than to facilitate the submission of a false claim? Well, there's a lot of discussion about the fact that this occurs after the C.I.A., the Corporate Integrity Agreement, which comes into effect for this corporation in 2011. What if we disagree and we conclude that indeed you can infer that false claims were submitted? Your argument is that that's not enough? Do we have to have an actual claim alleged in an invoice number? We have two arguments, Your Honor. The first is if we follow the stricter standard, yes, you have to have an actual claim that has a real basis where he knows it. He could have talked to somebody in billing. He could have talked to somebody in compliance. He could have called the hotline. Our backup argument is if the Court decides to follow Grubbs and the other cases which have the looser standard, he still wouldn't satisfy that. And so this Court could actually avoid the issue here if it decided to follow Grubbs, find that his complaint still wasn't sufficient, and affirm on that basis and would not have to decide the circuit split. I believe this Court does have to decide the circuit split. If the Court believes that he's met the Grubbs standard, then the Court has to turn to and decide whether the stricter standard has to apply. I hope I've answered the Court's questions. I know I've gone over by six minutes, so I would ask the Court. In paragraph 108, Mr. Fabula alleges that he was directed under threat of being put on unpaid leave to change and falsely certify the electronic entry of the PCRs in order to say that patient B had difficulty remaining in an upright position in order to qualify B's runs in the ambulance for Medicare-Medicaid reimbursement. And he says, no, I won't do that. Now, you tell me what it is that he needs to have said further in order to specify that he was objecting to falsifying a report that was going to lead to a claim to the government. Well, he doesn't, okay. I agree with Your Honor that that specific allegation there does sound like retaliation. Interestingly. He might be, I mean, you know, this might be false or it might be that he's alleging it artfully to make it sound like the person said this to him when in fact he's inferring that that's what they meant or something of the sort. But that's not how we judge complaints. This is what he alleges. It may be a lie, and you will find out in the course of discovery and litigation. Well, I'm hoping there's no discovery because it's obviously very expensive to do discovery in these cases. I will point out, and I know it's very expensive to the taxpayer to be paying for ambulance runs that are not in fact reimbursable. That's why there's this balance, this Escobar balance. I think the Supreme Court has really taken on this issue to say claims should be broadly construed, but we need to be examining them with rigor. And that's really what we bring to the court. The question is what constitutes rigor? And in this circumstance, it seems at this stage that there is enough there so that an inference could be drawn that the claims were submitted. Well, if we're going to go to the Grubb standard, it still has to be a strong inference, not a mere inference. And so on this record, we don't think that that would be true. May I make one more point on the retaliation I failed to make? One is the abandonment of the claim. So the same lawyers — I know this is an odd thing, but it's a procedural point I feel like I need to make. The Third Amendment complaint does not have count two. The Third Amendment complaint is filed by the bankruptcy trustee, and this is not a bankruptcy — It's not. It's not, Your Honor. It's not. It's not. So when you look at the first page of it, and I went back and looked at this last night just to make sure I wasn't wrong about this, and I can read it to you. It says that it's on behalf of the bankruptcy trustee — What page is this? I'm looking at the cover 8, 330. Yes. Paragraph 1. This is a key TAM action on behalf of the United States, blah, blah, blah, and also for the benefit of the bankruptcy estate of Paul Fabula and Paul Fabula individually. And as the Court knows, the lawyers here are representing Paul Fabula individually and the bankruptcy estate. So I think we do have a problem here that we have actually an abandoned claim. And so I do raise that. We did, I know, in our briefs. But I did check it last night, and I did recognize. Now, the complaint's a little ambiguous because at the end when they sign, they sign on behalf of just the bankruptcy trustee. But the allegations are what control in the complaint, not the signature of the lawyer. Well, you haven't said the allegations. You're saying the caption and the signature are the two things you referred to. Well, paragraph 1, paragraph 1, which is an allegation in the 30-minute complaint, says it's on behalf of both the bankruptcy trustee. On behalf of. That's a little peculiar, isn't it? Well, it says on behalf of the United States. Okay, that's because it's a key TAM. And it says, and also for the benefit of the bankruptcy estate of Paul Fabula. For his benefit. And, comma, and Paul Fabula individually. But where does Paul Fabula individually fit into the grammar of that sentence other than as the object of for the benefit of? Well, I guess I think about it this way. If we were to have to draft an answer. I mean, if he were writing this himself, I suppose he might say, Paul Fabula brings this action on behalf of the United States. But this is in the passive voice. And it seems like Paul Fabula only gets in there as a kind of beneficiary of the trustee's largesse. I'm not sure how that works. Well, Your Honor, you have to remember that the bankruptcy action that's the key date in the bankruptcy action is February of 2011. If you look at all the allegations that are really at issue here, they are post-February 2011. That's why they had to bring it on behalf of both plaintiffs. I understand that. But I'm just, it's just, I don't, maybe I'm. The bankruptcy estate doesn't own the claims that are post-February 2011. Exactly. So as a consequence, Mr. Fabula has to bring. Has to bring the claims. Has to bring the claims. And so Mr. Fabula has brought the claims that post-state bankruptcy, he has to be a plaintiff. The bankruptcy doesn't own those claims. They only own anything that predates February 2011. Thus, he is a plaintiff. And so by abandoning and leaving out count two for reasons that I don't know and don't understand, the claim is abandoned and therefore is not properly before the court. So that's our argument, Your Honor. The district court dismissed the retaliation claim, right? Yes. With prejudice. And then amended it. So in the November 6, 2015 order, it was dismissed also with the third amendment complaint, right? Or not? That's correct. And then the court. Why can't that dismissal be appealed? Well, because it was amended. So on April 3, 2015, we cite the order at our supplemental appendix, page 10. The court amended its prior order and gave leave to amend. And so it turns out we have a 1291, section 1291 issue, which I expect. Leave to amend as to both claims, right? As to both claims. And it has plural for plaintiffs. Did Mr. Fabula submit anything on his own after that April 2015 order? He did not, Your Honor. But he was represented by counsel. Well, I mean, he didn't submit anything to indicate one way or the other whether he was pursuing the retaliation claim. He just did not submit anything to try to cure the defects. There's no fifth amended complaint. Given there was leave to amend, there was no fifth amended complaint after that point. But he didn't submit something to the effect that I am standing on the second amended complaint so far. No. No. As retaliation is concerned. No. And I do expect in reply, as the court knows, there is a set of cases under 1291 that does permit the plaintiff to stand on the dismissed, what would be otherwise an interlocutory appeal. And I expect they'll stand on the plating as soon as I sit down. But that doesn't deal with the abandonment issue. That only deals with, that only fixes the 1291 issue. It doesn't fix the abandoned claim in the third amended complaint. Thank you. Thank you, Your Honor. Thank you for the extra time as well. And, of course, we do ask that the court affirm the district court. Understood. Mr. Levine. Your Honors, I want to address the 1291 issue immediately. I want to go initially to the question raised, I believe it was by Judge Lynch, with respect to patients' names in the third amended complaint. In fact, those names did originally appear in the third amended complaint and were ordered redacted by the trial court after the determination on the motion to dismiss the third amended complaint. And that appears at the special appendix, pages 45 and 46. So the complaint that was originally, the version of the third amended complaint that was served on the defendant had the names? Had the names, where those redactions currently appear. Let me just, if I may, address the claims of waiver. It is, indeed, the law in this circuit that there's no need to replete a claim that has been explicitly denied. And that's in Ray Kricin, the 226 F. 3rd. 160 at 162. And then more recently in Brown v. Dakin America, Inc. at 756 F. 3rd. 290. He was given leave to amend it. He was given leave to amend, but as the court, I think again, Judge Lynch pointed out, the holding by Judge Shea was specifically as to was there some act beyond the refusal to participate in the fraud that formed the basis of the retaliation claim. So it was leave to amend as to a claim that there was nothing further that he could allege to correct Judge Shea's determination on the motion to dismiss. In these circumstances, what a party usually does is that it keeps the claim in. In other words, the claim should have been repeated in the third amended complaint, even though it had been dismissed. I mean, that's, I think, the usual practice. And then with a note that you're preserving your appellate rights. The third amended complaint was filed really on behalf of the bankruptcy estate. I mean, in addition to the fact that it's signed on behalf of the bankruptcy estate, to the extent that Mr. Fabula appears in the third amended complaint, it really is because he retains a residual interest in the bankruptcy estate. The claim that was asserted in the third amended complaint was entirely as to the claim of the bankruptcy estate. At the time the third amended complaint was filed, who, if anyone, was representing Mr. Fabula? Trial counsel. Trial counsel for whom? At day one, Fabula files a complaint, right? And he's got a lawyer at that time, I take it. Yes. Who drafts that complaint and represents him. Then we get the dismissal on grounds of it really belongs to the bankruptcy estate. Then the bankruptcy trustee comes in represented by you or your firm or somebody else? We're actually a successor firm. We were not involved at the trial court level. But somebody distinct from the lawyer representing Mr. Fabula comes in representing the bankruptcy trustee? No, Your Honor. I believe it was the same lawyer. Oh, it's the same lawyer. The same lawyer representing both the bankruptcy trustee. Representing both Fabula and the bankruptcy trustee. Yes. Okay. With respect to the retaliation claim, the basis for Judge Shea's ruling was that there needed to be some further act beyond what Mr. Fabula did in refusing to participate in the fraud. So to the extent that the argument now is that Mr. Fabula failed to plead the defendant's awareness, number one, Mr. Fabula wasn't on notice that that was an issue in the district court. And I would submit with respect to this court's ability to review that claim on appeal, the requisite awareness of the reason for Mr. Fabula's refusal to alter the PCR can be reasonably inferred from the context of the other allegations of the complaint, which includes allegations that management expressly told EMTs to change PCRs in order to make the ambulance runs medically necessary and Medicare reimbursable. And that's at Joint Appendix 91, 98, 108, and 113. Allegations that requests for EMTs to make those changes to their electronic PCRs came with the threat that failure to do so would result in corrective action up to and including termination. And that's at the Joint Appendix pages 92 to 96. Allegations of suspensions for failing to fill out the paperwork with management corrections, and that's at pages 100 to 101 and 113. And allegations of numerous EMTs expressing concerns about altering medical reasons for ambulance runs and getting in trouble for submitting paperwork that was not reimbursable by Medicare. Judge Katzman, I neglected kind of the principal reason for why a determination that 9b doesn't have to apply to a presentment claim in an FCA context doesn't require broader revisiting of 9b jurisprudence generally, and that's because the FCA doesn't require reliance. So that in that respect, the FCA is its cause of action distinct from all of the other causes of action where this Court has had to rule on 9b in the context of a claim of fraud. Finally, with respect to the amicus briefs claim that only 6% of non-intervened cases have resulted in some sort of favorable determination, given the heightened pleading standards that have been applied to 9b in many circuits, and the unreasonableness of really essentially requiring that a relator have firsthand knowledge of actual bills, literally that the relator be an accountant or be in the billing department, I suspect that there are any number of babies that have been thrown out with that bathwater. Your adversary seems to suggest that it's an easy thing for somebody like your client to speak to the government. What is your experience? We've done a number of QI-TAM cases in my office, and it has never been our experience that the government has willingly given up information to support amended allegations of a QI-TAM complaint. And indeed, and I don't remember the specific case, there was a case from the Southern District where the government initially cooperated with the relator and then advised the relator that it could not use any of the information that was obtained by the government in its pleadings in a subsequent kind of amended QI-TAM. So I don't believe the government can, quite apart from the original source issue, which is a very substantial issue, but quite apart from that, I don't believe the government can be a meaningful source of information for a QI-TAM relator. And bear in mind, to the extent that 9B has any kind of purpose in cabining discovery, we're here on the question of presentment. If that really is an issue on a motion to dismiss, discovery can be very limited and tailored to the issue of presentment as an initial proposition. I'm just ordering discovery as to these particular cases, whether there were invoices submitted. If there weren't, then the whole case is presumably over. If there were, I imagine the discovery gets broader pretty quickly. Well, I think it could be both as to the specific cases and also there's an allegation that where there are two electronic, multiple electronic versions of a PCR, I think that, and only one was submitted to the government. I mean, so there can be a narrowly tailored discovery order that can deal with the specific issue of presentment as a kind of initial 9B discovery. If the panel has no further questions, I would urge reversal of the district court below and remand. Thank you. Thank you both for your arguments, the capital reserve decision. Thank you.